IN THE MATTER OF THE APPLICATION FOR A SUMMARY INVESTIGATION INTO THE AFFAIRS OF THE CITY OF NEWARK IN THE COUNTY OF ESSEX.

Argued October 23, 1937—Decided October 25, 1937.

Before Justice PARKER, at chambers.

*Pro se, Warren Dixon, Jr.*

For the city of Newark, *James F. X. O'Brien.*

PARKER, J.   The order for this investigation was made on October 16th, 1936.   The special commissioner set to work at once, and with my concurrence employed three counsel to assist him.   The task may be described without exaggeration as a colossal one, which as specifically stated in the verified petition required the exclusive attention and services of the commissioner and his aides every weekday, including holidays, often Sundays, and a great many evenings, over a period of exactly one year.   It was alleged that the petition is not sufficiently specific as to the time consumed.   I did not read it at the argument, but on reading it since, find that it is adequate in that regard.   I speak from personal knowledge in large measure, having been in almost daily contact with the commissioner or one or more of his assistants, except in July and August.   The hearings were public in a courtroom of the county court house, and reported day by day in the newspapers.   The investigation was pursued in the face of obstructive tactics, evasive testimony, refusals to testify, concealment, spoliation and destruction of documentary evidence.   The report, a volume of four hundred pages, speaks for itself.

The time has come to compensate the commissioner and his aides, not one of whom has so far received any compensation whatever for services performed.   Certain expenses have been paid; others incurred.   Counsel for the city, appearing pursuant to notice, resists the application now made, on three principal grounds as noted by me at the argument.   Nothing in writing was submitted.   These grounds were:   (1) insufficiency of the petition, as unverified, setting forth no details, and submitting no vouchers for expenses paid or incurred; (2) needless consumption of time and stenographic service in the taking of testimony; .(3) invalidity of the whole proceeding as violative both of the state and national constitutions.   These points may well be treated in reverse order.

As to the constitutional argument, it is now advanced for the first time, after a year, after completion of the work, and on a purely minor point, viz., a matter of costs. It is difficult to consider it as advanced seriously. So considering it, suffice it to say that constitutional objections to the statute underlying this proceeding have several times been raised, and as often overruled. *Hoboken* v. *O'Neill,* 74 *N. J. L.* 57; *Park Ridge* v. *Reynolds,* 74 *Id.* 449; *North Bergen* v. *Gough,* 107 *Id.* 424, 432. The matter is therefore judicially settled.

Fault is found with the investigation of matters more than two years old. But this is predicated on the incorrect assumption that the inquiry was limited to matters to be prosecuted under the criminal law. Neither by statute nor by the order is it so limited.

The objection of undue prolixity in examination of witnesses, &c., is likewise without substance. As noted, the hearings were public. The commissioner lacked the common law powers of a judge sitting in a common law court, to compel a recusant witness to answer by commitment for contempt, and much, if not most of the alleged prolixity is chargeable to this fact, particularly when it is understood that the great bulk of the evidence had to be extracted from unwilling and often contumacious witnesses. Here again, I speak from personal knowledge in part, having attended in person more than once at a hearing and compelled a witness to answer by taking steps for his incarceration in case of continued refusal; and having in fact attached one witness for contempt, the proceeding terminating in an apology and a fine after the desired testimony had been given. Again it is to be noted that this point is raised before me for the first time after the conclusion of the investigation. Further, it is to be noted that the commissioner and his aides are all counselors-at-law of standing and experience, who, for a year, have for most purposes abandoned their law practice to concentrate on this matter, and who can have no incentive to spin out a task which the longer it lasts, the more it interferes with their regular work and their prospects for the future. I see no merit in this point.

This brings us to the question of figures.

As to expenses—the item of stenographic services by the official stenographer, $17,768.25, was approved by me orally at the argument. There is nothing to show that it is out of the way for the work performed.

There are no travel expenses—each of the four lawyers has driven his own car and paid for the fuel.

As to services of commissioner and counsel, for a year, fourteen to sixteen hours a day, including Saturdays, Sundays and holidays, it may be well to quote what is said in the opinion in *North Bergen* v. *Gough, supra* (at *p.* 428): "almost of necessity, where the municipality is of considerable size and has diverse financial activities, the investigation must be made by experts and may run into large sums of money." In the North Bergen case the commissioner was paid $5,000 on a basis of three hundred and fifty hours service; counsel, $10,000, and auditor, $35,000.

Newark is a city of about half a million inhabitants. It "has diverse financial activities." The investigation had to be expedited in order to escape the statute of limitations. It was conducted as a practical matter, by four expert lawyers, each of whom has given the best that was in him, to the exclusion, and no doubt loss, of general practice. The liability of each for office expenses has been running. And it may not be out of place to add, that from the amounts awarded, a considerable normal income tax and surtax will have to be paid. Considering this, and the overhead cost of a busy lawyer's office, I deem the sums asked to be by no means unreasonable. There will be an award of $30,000 each to Messrs. Flanagan, Price and Steelman; and to the commissioner himself, $35,000. Order may be presented covering the foregoing approved items, and reserving for further order the expense totals of $4,871.03, and $2,344.77, as to which particulars were asked by the city. To some extent it may fairly be entitled to them, but where the commissioner deems it inadvisable to give them, I will myself pass on the details. But the other matters now decided need not wait for these.